MARGARET RYAN, ADM'X v. RALPH BAGALEY AND JOSEPH. KIRKPATRICK.

*Negligent injury—Mining captain not a fellow-servant.*

A mining captain who has the entire management of the mine without direction or interference by the owner occupies the owner's place and is not a mere fellow-servant of a laborer employed in the mine, even though he was not appointed directly by the owner, but only by the owner's agent. And the owner is liable for his negligence.

Error to Marquette. (Grant, J.) Jan. 18.—Feb. 27.

CASE. Defendants bring error. Affirmed.

*W. P. Healy* for appellant, cited as tending to show that the mining captain was not the owner's agent: *Albro v. Agawam Canal Co.* 6 Cush. 75; *Wigmore v. Jay* 5 Exch. 354; *Gallagher v. Piper* 16 C. B. (N. S.) 670; *Wilson v. Merry* L. R. 1 H. of L. 326; *Zeigler v. Day* 123 Mass. 152; *McCosker v. Long Island R. R.* 84 N. Y. 77; *Howells v. Landore Siemens Steel Co.* L. R. 10 Q. B. 62; Wood on Master and Servant § 427; *Lehigh Valley Co. v. Jones* 86 Penn. St. 432; *Malone v. Hathaway* 64 N. Y. 9; *O'Connor v. Roberts* 120 Mass. 227; *Howland v. Mil. & L. S. Ry. Co.* 54 Wis. 226.

*G. W. Hayden* for appellee.

GRAVES, C. J. The defendant [Bagaley] is proprietor of the Palmer Iron Mine, and Daniel Ryan, the decedent, while working as a laborer in the mine was suddenly killed by the fall of certain water-pipe which were being hoisted from below. The plaintiff claimed that the casualty was owing to negligence for which the defendant was liable and she hence brought this action and was allowed to recover.

That there was negligence as alleged is not disputed; and neither is it disputed that it personally rested on one Whitesides, the mining captain. The only point made is that

Whitesides was in the performance of his customary duties as the fellow-servant of Ryan, and hence that the defendant was not answerable to one for the negligence of the other.

It is expedient to refer to a few facts. As a part of the general business a store was carried on. The defendant lived in Pittsburgh and the conduct of affairs was confided to local agents, and the agent first in station was Kirkpatrick. But neither he nor the defendant was competent to work the mine. They were untaught. Therefore all matters in regard to working the mine were required to be left to some one else and they were committed absolutely to Whitesides, the mining captain. Kirkpatrick took care of the store and had charge of the financial part of the business. He also kept the books. He rarely went to the mine and had no control over its peculiar operations. He in fact appointed Whitesides but did not assume to direct or control him.

The defendant made frequent visits and was accustomed to consult with Whitesides and listen to his plans and arrangements about the conduct of the mine, and in case the defendant knew anything on the subject, which rarely happened, he would tender advice.

The plaintiff took the position that according to the facts, which were not disputed, the authority and control delegated to Whitesides over the mining and the mine were such that the latter was not to be regarded as a mere fellow-servant of Ryan, but for the purpose of seeing who was responsible he was to be deemed as standing in the defendant's shoes and as affecting the latter with whatever liability there was. Upon this point the circuit judge instructed the jury as follows: "Now what was the position of Captain Whitesides? He was a mining captain. I think it appears from the testimony that he had the entire charge and control of the underground work and all the work generally of the mine and that he employed and discharged men. Now I charge you that Captain Whitesides, if he had this power delegated to him—to manage and control the mine—negli-

gence on his part would be the negligence of the owners or managers of the mine."

Under this charge and in view of all the facts it was settled by the jury that Whitesides' position and power were as indicated by the judge. We are consequently to consider that he was intrusted with the management of the mine without direction or interference. He was not in any true sense a mere foreman or department leader or sub-chief in a given sphere of the mining operations. His agency covered the entire mine and his capacity and discretion dominated. The defendant and the agent Kirkpatrick equally regarded him and looked to him as the one person to contrive and execute, and they were guided by his intelligence: not he by theirs. In respect to legal accountability his negligence was the negligence of the defendant. The case is within the principle stated and recognized in *Quincy Mining Co. v. Kitts* 42 Mich. 34; see also *Dobbin v. Richmond & Danville R. R. Co.* 81 N. C. 446; *Brothers v. Cartter* 52 Mo. 373; *Mullan v. Phila. & S. M. S. Co.* 78 Penn. St. 25; *Corcoran v. Holbrook* 59 N. Y. 517; *Schultz v. Chicago etc. Ry.* 48 Wis. 375–380; Wood's Master and Servant § 438 and cases.

It is not material that Whitesides received his appointment directly from Kirkpatrick. For the question in hand it is just the same whether his employment was directly by defendant or through another. The point is what as matter of fact was his position, not by what directness or circuity he got it.

If he was put into what was in substance the place of the defendant in regard to the actual control and management of the mine it is of no importance that his being put there was through the agency of another instead of being by the immediate personal act of the defendant.

I think the judgment should be affirmed with costs.

Cooley and Marston, JJ. concurred.