HANS C. ANDRESON, RESPONDENT, *v.* OGDEN UNION RAILWAY AND DEPOT COMPANY, APPELLANT.

MASTER AND SERVANT.—PLEADING.—CONTRIBUTORY NEGLIGENCE.— *Semble* that contributory negligence is an affirmative defense, and in order that evidence of contributory negligence should be offered, it should be pleaded in the answer.

ID. — NEGLIGENCE. — PERSONAL INJURY. — CONTRIBUTORY NEGLIGENCE.—Where defendant was operating a train of cars for hauling gravel, which was done by the cars being run into a gravel pit and there loaded by a large crew of men, and the gravel was taken from a perpendicular embankment fifteen or sixteen feet high, and the plaintiff was employed by order of the foreman at the time of the accident, in moving the railroad track nearer to the embankment, and the embankment, having been undermined by order of the foreman, fell upon plaintiff, who did not notice that the embankment had been undermined, and the foreman had been accustomed before that time to give warning when the embankment was undermined, but did not do so at this time; *held* that the plaintiff had a right to expect a warning from the foreman, and that the evidence showed negligence in the defendant and did not show contributory negligence in the plaintiff.

ID.—ID.—FELLOW SERVANT.—The foreman of the defendant in full charge of a gang of laborers engaged in taking gravel from a gravel pit, and using cars and moving tracks for that purpose, is not a fellow servant with the laborers so engaged.

DAMAGES. — PERSONAL INJURY. — OPINIONS OF WITNESSES. — The opinions of witnesses as to the amount of damages in a personal injury case are not competent evidence. The jury are to determine that question from the evidence in the case.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Williams and Van Cott,* for the appellant.

*Messrs. Evans and Rogers* and *Mr. N. G. Horn,* for the respondent.

ANDERSON, J.:

This action was brought by plaintiff in the first district court to recover damages alleged to have been received by reason of the negligence of defendant's servants while he was in its employ as a laborer.    The complaint alleged the corporate capacity of the defendant, and that on the 21st day of May, 1889, it was engaged in the business of constructing and repairing roadbeds and grades upon which to run its locomotives and cars, and was operating the same in hauling gravel, and that the plaintiff was employed as a common laborer; that while he was so employed he was ordered by the foreman of the defendant to work on the roadbed and grade at a point under an embankment which was loose and defective and unsafe, and which was unknown to be so by plaintiff, and was known to be so by defendant; and that while he was so working, and without fault on his part, he was injured by reason of the embankment falling on him, to his damage in the sum of $20,000.    The answer of the defendant denied all of the allegations of the complaint, except the corporate capacity of the defendant and the character of the business in which it was engaged. The cause was tried to a jury, and there was a verdict and judgment in favor of the plaintiff for $7,000.    The defendant filed a motion for a new trial, which was ordered granted, unless plaintiff would remit $2,500 of the judgment, and which was remitted by him; whereupon the motion for a new trial was denied, and the judgment ordered to stand for $4,500 and costs.    The defendant brings this appeal from the judgment, and from the order overruling its motion for a new trial.

9

On the day of the accident the defendant was operating a train of cars hauling gravel from a pit near Ogden. The cars were run into a pit about two hundred and fifty feet long, and there loaded by a crew of men, some fifty or sixty men being engaged in the work in various capacities. The gravel and earth were taken from an embankment sixteen or eighteen feet high, and nearly perpendicular. Some of the men worked with picks, and undermined and caved down the embankment, while others loaded it on the cars. When the bank became too far removed from the track on which the cars were loaded to be convenient in loading the cars, the switch or track would be moved, as a whole, nearer to the bank, and at such times it became necessary to bed the ties, and straighten and level the track. The plaintiff had been in the pit about a week assisting in loading the cars and moving the track, but at no time engaged in caving down the bank. On the forenoon of the day on which the accident occurred, Shea, the defendant's foreman, ordered one Merritt to undermine a portion of the bank. Merritt cut a gash about fifteen feet in length, and about five feet under the bank from its face, and about two feet high. The plaintiff, being engaged in loading cars, did not notice what had been done by Merritt. After several hours, Shea ordered Merritt to go to the top of the bank, and cave or throw down. Merritt cut a gash at the east end of the bank, in the face of it, and a trench along the top of it, back about five feet from the face of the bank, and also a number of holes a foot or so in depth, so as to loosen the dirt and make it fall. This work was done under the direction of Shea; but before it was finished, and while the dirt and gravel were liable to fall, Shea ordered Merritt to come down and assist in moving the track nearer the bank, which was done. Shea then ordered plaintiff to fill up the low places and tamp the ties, to perform which labor required him to stand part of the time near the bank,

with his back towards it.  He was not aware of the dangerous condition of the bank, and while engaged in fixing the track and ties the bank broke and fell in the dimensions in which it had been cut.  A large quantity of gravel fell upon the plaintiff, and pressed him to the ground and across one of the rails, whereby one of his legs was dislocated, his jawbone broken, and he was otherwise seriously injured, and was crippled for life.  The evidence showed that it was the custom, when the bank was undermined, to continue the work until it was thrown down, at which time warning would be given to the laborers, and that this was the first time the bank had been left standing after being undermined.  When it fell no one was working on the bank to throw it down, and no warning was given; the men being engaged in moving and fixing the track. The evidence was conflicting as to whether warnings were ever given except when the train was coming in or going out of the pit, or when some one was on the bank throwing it down.  At the time of the accident there was no train there, nor was there any one on the bank trying to throw it down.

Counsel for the appellant insist that the verdict is unsupported by the evidence, that the evidence shows the defendant was not guilty of any negligence, and the plaintiff was guilty of such contributory negligence as should defeat his recovery.  Contributory negligence on the part of the plaintiff was not pleaded by the defendant as a defense to the action, but, notwithstanding its failure to do so, it was permitted, without objection, to introduce evidence tending to show negligence on the part of the plaintiff tending to produce the injury complained of.  The court instructed the jury fully, and as we think fairly, in regard to the duty of the plaintiff to exercise due care and caution to save himself from injury in the dangerous work in which he was engaged, and also as to the duty of the defendant to provide a reasonably safe

place for the plaintiff to perform the labor he was ordered to do, and to give warning to the men when danger became imminent from undermining the bank or from other causes occurring during the progress of the work. Upon the issue of negligence the jury must have found against the defendant in order to have returned the verdict they did. The question of the negligence of the respective parties was a question which it was the special province of the jury to determine, under proper instructions from the court, and their verdict should not be set aside as unsupported by the evidence, unless it is so clearly and palpably against the weight of the evidence as to appear to have been rendered under some mistake or from prejudice, passion, or other improper motive. We have carefully examined the evidence, and think the jury were justified in their finding. The court, in effect, instructed the jury that the foreman Shea and the plaintiff were not fellow servants, and the giving of this instruction is assigned as error by appellant. The undisputed evidence in the case shows that Shea was the foreman of the appellant in the gravel pit, and had full charge of the work; that he had the power to hire and discharge men; and that he gave them their time checks; and that in performing the labor they were engaged to do they worked under his exclusive direction and control.

The law is well settled that a servant, in entering the service of his master, takes upon himself all the ordinary risks incident to the business, including the negligence of other servants employed with him by the common principal, but who have no control over the business or labor in which they are engaged, nor over the servant who receives the injury; but he does not assume risks and dangers caused by the negligent act of another servant under whose orders he works, and who, in a legal sense, stands as the master's representative, in rendering unsafe and dangerous work which the superior servant orders the

employe to perform. *Railroad Co.* v. *De Armond* (Tenn.), 5 S. W. Rep. 600; *Railroad Co.* v. *Brooks,* 83 Ky. 129; *Railroad Co.* v. *Keary,* 3 Ohio St. 201. In the case last cited above. the supreme court of Ohio says: "No service is common that does not admit a common participation, and no servants are fellow servants when one is placed in control over the other." In the present case the plaintiff was working under the supervision and control of Shea, who had authority to direct when and where he should work, and to discharge him whenever he chose; and we think they were not fellow servants, and that the court committed no error in so instructing the jury. *Reddon* v.. *Railway Co.,* 5 Utah, 344, 15 Pac. Rep. 262; *Daniels* v. *Railway Co.,* 6 Utah, 357, 23 Pac. Rep. 762; *Ryan* v. *Bagaley,* 50 Mich. 179, 15 N. W. Rep. 72; *Railroad Co.* v. *Stevens,* 20 Ohio, 415; *Railroad Co.* v. *Keary,* 3 Ohio St. 201; *Railroad Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184; *Railroad Co.* v. *Herbert,* 116 U. S. 642, 6 Sup. Ct. Rep. 590; *Hough* v. *Railroad Co.,* 100 U. S. 213; *Railroad Co.* v. *Fort,* 17 Wall. 553.

The court instructed the jury "that if you find it was the custom and practice of the defendant, within and for a period previous thereto, to give timely warnings to the employes at such times only as earth was pushed down the bank, or when there was danger, and not at other times, and the plaintiff knew of this custom, and relied upon it, then the plaintiff would have a right to have expected such warning when danger was imminent from such cause, and he would not be expected to keep so constant a watch to detect danger, or so high a degree of care to avoid it, as he otherwise would be required to do at this time." Counsel for the defendant contend that the giving of this instruction was error. The evidence showed that, while there was some danger at all times from falling dirt and gravel, yet the danger was much

greater when dirt was being pushed down, or when the train of cars used in hauling it away was in motion alongside the bank, and that at such times it was customary to give warning to the men of the danger. When the track was being moved over nearer to the bank, and when it was being leveled up, the men engaged in fixing the track would sometimes be compelled to work with their backs towards the bank, which greatly increased their danger, especially if others should be engaged at the time in pushing dirt down the bank. It would be but the plainest dictate of prudence that the men should be warned of any such danger, and they would naturally expect such warning to a considerable extent; for otherwise it would be impossible for them to do this work without greatly exposing their lives, as they could not perform the work and at the same time watch the bank behind them as closely as ordinary prudence would require under different circumstances. We think there was no error in this instruction.

The court instructed the jury, in case they found from the evidence that the plaintiff was entitled to recover, that, "to enable the jury to estimate the amount of such damage, it would not be necessary that any witnesses be sworn or shown to have expressed an opinion as to the amount of such damage, but the jury may themselves make such estimate from the facts and circumstances in the case, by considering them in connection with their own knowledge and observation and experience of the business affairs of life." The giving of this instruction is assigned as error. The opinion of a witness as to the amount of plaintiff's damage would not have been competent. The amount of plaintiff's damage was properly left to be determined by the jury from the facts proven. The court in another part of the same instruction said to the jury that, "in determining the question of damage, you should take into account what injury, if any, the

plaintiff has received, his age, his health, his habits, his ability before he was injured, if you find he was injured, to earn a livelihood, his ability and condition now, and to determine, from all the facts and circumstances, what would compensate him, as near as money can do, for the injury he received, if he did receive any." We think there was no error in the part of the instruction excepted to, and that the jury was properly instructed as to the manner of determining the amount of plaintiff's damage. We find no error in the record, and the judgment of the district court is affirmed.

ZANE, C. J., and BLACKBURN, J., concurred