### THE WABASH RAILROAD CO. v. TERRY E. HEETER.

1. IT IS NOT NEGLIGENCE IN A BRAKEMAN TO STEP UPON THE PILOT OF A MOVING ENGINE.

It is not negligence for a brakeman engaged in the regular discharge of his duty, to step upon the pilot of a moving engine from the outside of the track, it being necessary for such brakeman, in the proper discharge of his duties to get on the pilot of the engine, as that was the proper method of doing, and was the method universally employed, in order to facilitate business in coupling cars by means of the draw bar of the engine.

2. KNOWLEDGE ON THE PART OF THE BRAKEMAN THAT THE ENGINE WAS BEING OPERATED BY THE ENGINEER ALONE, EFFECT.

The knowledge on the part of the brakeman of the fact that the railroad company permitted its engine to be operated by the engineer alone, while the fireman was at dinner, was not such negligence on the part of the brakeman so as to preclude a recovery for an injury received while the engine was being thus operated.

3. PROXIMATE CAUSE OF INJURY.

Where a railroad company permits its engine to be operated by the engineer alone, while the fireman is at dinner, and it so happens that during this time a brakeman who was engaged in the regular discharge of his duty receives an injury while attempting to step upon the pilot of the engine while in motion, but in some way slipped and fell and was caught under the pilot and pushed along several feet, until the attention of the engineer, then temporarily on the left side of the engine, was attracted to the other side, whereupon he immediately stopped the engine, but after the injury to the brakeman had already been done: *Held,* that the proximate cause of the injury was the negligence of the company in not furnishing two men to run the engine, and in sending it out with only one man, and therefore the proximate cause of such injury was not the negligence of the engineer in leaving his side of the engine and going to the opposite side.

KING, J.

This is a proceeding in error. The action was begun in the common pleas court by the defendant in error, Terry E. Heeter, to recover damages of the Wabash Railroad Company for the consequences of an injury which he alleged he received while in their employ, about the 8th of September, 1893, which injury resulted to him in severe pain and suffering, the bad bruising of his leg, requiring it to be amputated, and afterwards requiring him to submit to a second operation and course of treatment in the hospital covering a period of more than a year before there was a healing of the amputated limb. He claims damages to a considerable amount—named in the petition—and on the trial in the court of common pleas he recovered a verdict upon which a judgment was rendered for $8,900. The Wabash Railroad Company seek to have that judgment set aside, and for a number of reasons. These are, however, mainly confined to alleged errors in the charge of the court, excepted to at the time of its delivery, and to the refusal of the court to give requests made by its counsel at the trial, and upon the ground that the judgment was contrary to law and against the weight of the evidence. That is the real controversy submitted to us and it resolves itself perhaps into three questions arising in this case and which I will notice later.

The petition alleged as a ground of negligence that it was the duty of the defendant company to provide a safe and proper engine, and also the duty of the company to have two persons upon its engine, while in motion, for the purpose of properly operating the same, one of them to act as fireman and the other as engineer. That at the time he was injured the defendant did not have a fireman and engineer upon its said engine, "but on the contrary carelessly and wrongfully allowed and permitted the fireman, without the knowledge of plaintiff, to leave the cab of said engine to go to his dinner, and negligently, carelessly and wrongfully allowed and permitted the engineer to remain alone upon the said engine to perform all the duties in the operation thereof. And so it was that when the plaintiff fell from the pilot of said engine, the engineer not being in his place upon the said engine, ready and able to perform the duties incumbent upon him, under such circumstances, but being otherwise occupied in the cab thereof, was not looking ahead upon the track or keeping a look thereon, as it was his duty to do, so as to see the dangerous position of the plaintiff or to hear his loud cries for "help." By reason of which the plaintiff was dragged for a great distance along said track in front of the locomotive and received these injuries to his leg of which I have spoken.

There was another ground of negligence mentioned in the petition, and that was that this engine was not properly equipped or constructed in that it had no step upon the pilot thereof, as was customary and usual and necessary; but, upon the trial of the case the plaintiff disclaimed that as a ground of negligence. Some complaint was made here in argument by counsel for the plaintiff in error because this was allowed to be done; but that certainly by no amount of reasoning could be resolved into anything prejudicial to the plaintiff in error.

The ground of negligence then upon which the plaintiff sought to recover was, that the defendant had insufficiently equipped this engine with hands to work the engine and had sent it to work shorthanded, in consequence of which he had been injured. The particular facts of his injury were substantially these: This was a regular freight train

starting from Ft. Wayne and coming in an easterly direction down to Defiance, Ohio. It left Ft. Wayne at 6 A. M. and reached Defiance—its schedule time being 9:45, but it was usually behind time and arrived there on the day in question about 11 o clock It did some work around the depot; and then the fireman left the engine and went to a lunch counter, or restaurant, to get some dinner. He was accustomed to do that at that point, provided the train arrived there in the neighborhood of noon, and it happened on the day in question that he did go to his dinner, and that the conductor—having been informed that there was a car west of the depot about a half a mile which was necessary to secure, directed the engineer to go and get it. The list of cars was furnished by the agent of the company at that point to the head brakeman. a man by the name of Day, and he thereupon told the plaintiff—who was a brakeman—to accompany the engineer to the point mentioned and get this car. Day and another person also, got upon the engine. It was customary and usual, when going a short distance in the yard, at Defiance and at other points, for the purpose of pulling out cars from a string, for the brakemen who were to make the coupling to climb upon the pilot of the engine and ride back. They did this upon this occasion, at least two of them did. They rode back to a point in Defiance which is the crossing of the Baltimore & Ohio Railroad and The Wabash, located about a half mile west of the Wabash city depot. Before they had reached the crossing, Day and the other man who was on the engine got off the engine, about four to six hundred feet east of the crossing, and Day went and looked up the car that was to be pulled out of the string of cars standing on the side track, and the other man went to hunt up a pin for the purpose of making the same coupling, and the engine with the engineer on only, and the plaintiff on the pilot, went back to the crossing. The engine stood upon the crossing, with its pilot projecting a little bit east of the crossing, of the crossing of the tracks —not more, I take it, than two or three feet—and the plaintiff got off from the pilot on the right hand side of the engine, which was headed east, and on the right hand side of the track. He then crossed the track in front of the pilot to the switch-stand, which stood on the north side of the Wabash track, and threw the switch, so that the engine might go over from the main track to the side track on which the train of cars was located. He then threw the switch, and he testifies that he then stepped back to the right hand side of the track—or to the south side of the track—and then gave signal to the engineer who was in his place on the right hand side of the engine looking easterly—to come ahead, gave the usual and ordinary signal. If the plats and evidence are to be relied on in the case, he stood then within twenty feet of the pilot of the engine—not exceeding that distance—easterly of it. The engine moved up from a standstill, to the point where he stood, about twenty feet from it, and he then attempted to board the pilot of the engine by stepping upon the lower rail of the pilot-beam which runs around the pilot, and taking hold— with his left hand, probably—of the short staff that is fastened into the pilot-beam, and to thus assist himself upon the beam for the purpose of riding back to where the cars were which it would be necessary for him to couple. It is claimed by him that it was necessary for him to be upon the pilot in order to make the coupling involved, for the coupling was made with a coupling-bar—shown in evidence—which weighed about 120 pounds, and was quite a heavy load for a man to lift and hold and steer in order to make the coupling with one hand and it was said

that it could not be done by a man standing upon the ground, but that it was necessary for him to stand upon the lower sill of the pilot in order to hold this coupling-bar and enter it into the draw-bar of the car. And it was said that it was proper for him to do it in that manner, because is was a customary thing—that it was always done in that way, not only in *that* yard but in other yards. It is claimed on the part of defendant as to that, that there was a rule upon the subject; and that the rule goes to the extent of prohibiting persons from getting upon the pilot from a position between the tracks—that is as far as the rule goes—and the evidence upon that subject was to the effect that it was the invariable custom to let them get upon the pilot from the outside of the track—with the knowledge of the engineer and of the railway company. On the day in question, this plaintiff attempted to step upon the engine, which he testifies was running a mile an hour. There is some other evidence which gives it at two miles an hour; but we think it is clear that it could not have been at a greater speed than that, since it only went twenty feet. It seems he stepped upon the sill of the pilot and undertook to take hold of the flagstaff, and in some manner his right foot slipped and the foot and leg went under the pilot suddenly, and the engine moved along pushing him upon the track as I have stated. He made an outcry and others at work near the crossing of the Baltimore & Ohio Railroad Company called out very loudly, several of them. The testimony is practically undisputed in the case—except so far as the engineer may have disputed it—that after Heeter had given the signal to go ahead, the engineer stepped from the right side of the engine to the left side—into the fireman's place—to look ahead, and was looking ahead when Heeter fell and was caught under the pilot and was pushed along for about 65 feet, until finally the engineer's attention was attracted to the side where Heeter was, and there he saw what was being done, when he instantly reversed the engine and it is said that as soon as he took hold of the lever of the engine, it stopped, that is, within four feet from the time he commenced to stop it, but the injury to the plaintiff had already been accomplished. Now that is the way in which this injury happened.

It is claimed that the verdict rendered was contrary to the evidence and contrary to the law, and that is urged to us hereupon three grounds: *First*—that the plaintiff below was negligent in getting upon the pilot of a moving engine. *Second*—that if he knew that the engine was at that time being operated without a fireman, he was negligent in continuing to work around it, or continuing, perhaps, in the employ of the company. *Third*—that the proximate cause of the injury was the negligence of the engineer in leaving the proper side of the engine and going to the other side, and not in the failure of the company to supply a fireman—in other words, that the proximate cause was the negligence of a fellow servant—for such it is conceded the engineer was—and not that of the master.

Now I shall only briefly notice these three rounds of negligence.

As to the first. it is claimed that he was negligent in getting upon the pilot of a moving engine. I have already stated what the fact was as to the custom and usage and also as to the necessity for his being upon the pilot. I should say, in that connection that the parties upon the trial submitted certain questions to the jury, to be answered and one that was submitted by the railroad company was this: "Was it necessary for the plaintiff, in the proper discharge of his duties, to get

on the pilot of the engine at the time and place he did get on? And that was answered "Yes." It is probably not quite true that *it was* necessary for the plaintiff below to get upon this pilot of this moving engine at that particular spot; it is true that he could have accomplished his work without doing that; it is true that he could have climbed upon some other part of the engine—could have climbed into the cab, and rode back to where these cars were, in company with the engineer; it is also true that he could have walked the distance—for it was not a great distance—probably not over five or six hundred feet at the outside He could have walked o r have ridden upon some other part of the engine—so that it is hardly true, as stated by the jury in answer to this question which was framed by the attorney for the railroad company and submitted to them—that it was "necessary" for the plaintiff below to climb upon the pilot of the engine at this particular time and place. But we think it is true, from the evidence in the case, that the jury might have found, had they been asked to so find here, that it was not negligence for the plaintiff below to climb upon the pilot at the time and place he did so climb upon it. It is conceded all the way through this record—substantially conceded, that it would be necessary for him to be upon the pilot at the time of coupling the engine to the car. It is also true that the company expected him to be there at the car when the engine arrived. It is also true that he could not make the coupling with the engine standing perfectly still, since there must be a movement of the engine forward in order to enter the coupling-bar into the draw-bar of the standing car with which he was going to make the coupling. Now, that being true, it matters not as to whether he got on to the pilot at this particular spot or whether he waited until the engine approached nearer to the car and then climbed upon it. The fact of this engine's moving, seems to us to be a very immaterial matter. This man was an experienced brakeman; he had been working for this company ten months; he had been doing this same work every day that he had been in their employ. It had been done under the eye of his superior officers and was conceded all around to be a proper method of doing that work and was the method employed by every one without exception; and in order to facilitate business, it was expected that a man in the employ of the company should take a little risk—that which seemed to be safe to him from observation and from this experience, and the speed at which this engine was then moving was so slow that no great danger could have been anticipated in stepping upon this pilot at that time. So then we think that the claim made by the plaintiff in error, that this was against the evidence upon that point is not substantiated.

A great many authorities have been cited to show that this was contributory negligence. We think the rule applicable is as stated in the case of *Wright* v. *Southern Pacific Co.*, found in 46 Pac. Rep., 377.

"Whether, under the circumstances disclosed by the evidence, the plaintiff, at the precise time of the accident, was exercising such care as a reasonable and prudent man, having due regard for his own safety, would have exercised under similar circumstances, or whether he was guilty of contributory negligence in disobeying the rule referred to, and attempting to uncouple the cars while in motion, were questions of fact for the jury to determine. The plaintiff's disobedience of the rule, under the state of facts shown by the record, did not, as matter of law, preclude his recovery. Stepping between cars while in motion to un-

couple them is not, as a matter of law, negligence, but the question is one for the jury."

Many authorities are cited.

"Nor do we think the court erred in admitting evidence to show that it was the custom of the switchmen, in the yard at Carlin, to couple and uncouple cars while in motion."

And they discuss that to quite an extent, and cite the case of *Hunn* v. *Railway Co.*, 78 Mich., 513, where the court said:

"We think it was competent to show what was usually and habitually done in the running of trains, because, if the company permitted or had so framed the rules as to require the employee to exercise some discretion in the matter of strict obedience, it ought not to be permitted to hold its employees to the very letter of the rule, in order to shield the company from liability for what it had tacitly permitted."

And that was where there was a plain and distinct rule of the company that the cars should not be coupled or uncoupled while they are in motion. But here there was no violation of any rule; the rule only provided that persons should not step upon the pilot of a moving engine from the track of the company, impliedly sanctioning the stepping upon the pilot of a moving engine from the outside of the track, and that is exactly what the plaintiff below did.

*Second*—It is said that if the plaintiff knew that this engine was operated without a fireman, it was his duty then to not work with it any longer. That would seem to be a very impracticable rule of law to be laid down in the form it is claimed. It is true that when one becomes aware of defects which he, in the exercise of ordinary care, might reasonably know would bring accident or injury to him, or which he krew were dangerous, it is his duiy then to inform his employer of these facts, and then he is only authorized to continue longer in the particular employment or service upon the promise of his employer, within a reasonable time, to remedy or repair these defects. But then, in that case, it has been said that the question, whether he knew or ought to have known that the defect in question, although he knew that it was a dangerous one, was one which would probably injure him, is a question for the jury, and a court has said that in a well-considered case in 115 Mo. Rep., 205. That was a case where the plaintiff stepped upon a foot-board running across the front of a switch engine, which was slanting and from which his foot slipped off. He knew of that fact, and the court say:

"Knowledge by the switchman of the slanting and dangerous condition of the foot-board by reason of which he was killed will preclude a recovery for his death, unless the foot-board was not so dangerous as to threaten immediate injury or the deceased might have reasonably supposed that he could with care and caution have safely used it.

"Whether the foot-board was unsafe because of its slanting condition, was, under the evidence, a question for the jury."

And in the case of *Wright* v. *Southern Pacific*, 46 Pac. Rep., at page 375—which was an injury received from the operation of an engine without a fireman, and in that respect about like this—the court says:

"We do not think that the plaintiff's knowledge of the fact that the defendant operated its engine without a fireman was of itself sufficient to preclude a recovery. Such a result would not follow unless the want of a fireman caused the operation of the engine in the yard in question to be so obviously dangerous that a man of ordinary care and reasonable

prudence would refuse to act as switchman. The evidence fails to show that there was any such obvious danger, and it may rightly be assumed that the agents of the defendant who had charge of its operations in that yard, deemed it safe for the engineer to perform the work of fire-man in addition to his duties as engineer; and, under the circumstances of this case, the plaintiff had the right to rely, at least to some degree upon the judgment of those agents. Under the evidence shown by the record, we would not be warranted to hold that the plaintiff was bound to rely entirely upon his own judgment and in opposition to that of the officers of defendant, determine that it was absolutely unsafe to operate the engine without a fireman and abandon his employment as switch-man.''

Now that is like this case. But, in the case at bar the plaintiff denies that he knew there was no fireman in the cab of this locomotive; but, admitting that he did know; he also knew that the company had been almost always—or at least on some occasions, permitting the engine to be operated by the engineer alone in the absence of the fireman for a long course of time and without injury to any body, and can it be said as a matter of law that the plaintiff was bound to know that that was neg-ligence, from which he might receive an injury? The company, repre-sented by its agents and its workmen, had seen fit to send this engine out alone with the engineer. Was their judgment to be disregarded and the judgment of a brakeman substituted for the judgment of the com-pany? We think not. And it may be said that even if he knew there was no fireman, still that of itself alone would not make him negligent —especially as no injury had ever occurred in consequence of the ab-sence of a fireman.

*Third*—It is said, and argued somewhat strenuously that the proxi-mate cause was the negligence of the engineer, and was not the failure of the company to supply a fireman. In this connection I should say that the defendant below submitted these interrogatories to the jury, and which were answered:

1. Was the engineer, Casper Smith, a fellow servant of the plaintiff at the time the plaintiff was injured? Answer. Yes.

And in the arguments and in the charge of the court to the jury he was treated as a fellow servant.

2. Was the negligence of the engineer the proximate cause of the plaintiff's injury? Answer. No.

3. Was it necessary for the plaintiff in the proper discharge of his duties to get on the pilot of the engine at the time and place he did get on? Answer. Yes.

Also the plaintiff submitted some interrogatories, which were these:

Was the railroad company negligent in not having two men on the engine when plaintiff was hurt? Answer. Yes.

Was the absence of the fireman the proximate cause of the injury? Answer. Yes.

So the jury had found that the absence of the fireman was the proxi-mate cause, and that the company was negligent in not having him upon the engine, and also that the negligence of the engineer—the way the question is framed—was not the proximate cause of the injury. Now the jury have not said, by this special verdict, that the engineer was negligent; they have answered the question as put to them. It is argued that this answer assumes the engineer was negligent, but

whether it does or not, the jury have answered that the engineer, whether negligent or not, was not the proximate cause of the injury, and that the proximate cause of the injury, was the absence of the fireman, or the failure of the company to furnish two men on this engine. As we view this evidence, we think it sustains that view. It is true that a superficial view of this subject might lead one to say that it was the fault of this engineer that this accident happened—that it was his fault in leaving his own side of the engine. But, can it be said seriously, that if this company sees fit to send out its engine in the control of one engineer—putting only one person in the cab to manipulate it, to give signals and to watch out ahead for obstructions upon the track—that it is not his duty to look as well upon the one side as upon the other, of the engine? Can it be said that he should give his attention altogether to the side upon which the lever is on and that he should not look out ahead? It is clear from the testimony that one of these men got off from the engine five or six hundred feet away from and went up there to the vicinity of this car which was to be pulled out. They were to attach the engine to the first car and that was attached to a string and at the east end of the string was the car they wanted to get. They then pulled out this string of cars and run back over the switch and pushed this car—which was an oil car—ahead upon the main track—having uncoupled it before pushing it—and then came back upon the side track with the balance of the string of cars and left them. That was to be the course of doing the work, and this brakeman had gone back to the end of this string to see that this oil car was securely coupled to the balance of the train, and that the rest of the cars were all coupled, so that all the cars could be moved, and I think it cannot be said that it was not the duty of the engineer to look out on both sides of the engine. It cannot be said as a matter of law that the jury would not have been justified in finding that the engineer was in performance of his duty although he left the right hand side of the engine and was engaged in looking out to the left at the particular instant of time when the plaintiff fell and was caught. Now I do not think I need to extend observations upon that subject further. We think, from the evidence, that the plaintiff was entitled to the verdict which he recovered here. It was the duty of the engineer while he was at this point to look out ahead; it would be necessary for him to see along the track on which these cars were standing on the left hand side of the engine. There is a distinct and plainly marked curve upon the cross track which runs from the main track to the siding and if the engineer intended to look out ahead before his engine reached the straight part of the siding, it would be necessary to look out to the left hand side, and we cannot say that he was actually negligent in leaving one side and going to the other side to look.

A good deal has been said about the charge. The most of those objections can be disposed of by saying that the jury have found, in answer to the few interrogatories which were submitted to them, the questions of fact upon which they say the plaintiff is entitled to recover, so that much of that which was submitted to the court by the defendant below is taken out of the case. There were nineteen requests to charge, made by defendant below, most of which were refused by the court, but I will not undertake to go over each one and give the reason why the court would have been justified in refusing them. Some of these it may be said, it would have been as well for the court to give, but they

are no longer of importance, since the jury have detrmined the particular questions of fact which they refer to.

There were exceptions to the charge of the court which I will speak of. The court charged the jury this:

"But, gentlemen, further and in this connection, you must regard this further rule of law—the rule that the negligence of an injured party which proximately contributes to the injury precludes from recovery—has no application where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him.

"The plaintiff in this case, if otherwise and upon the evidence and under the rules of law, entitled to recover, is not precluded from such recovery even if he was himself negligent in attempting to get upon the pilot of the engine, if you so find—that the engineer, after he became aware or ought to have become aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him and he was thereby injured."

Now then, the court had told the jury—not perhaps exactly, but in language that bears that construction—that the engineer was the fellow servant of the plaintiff. Counsel for plaintiff below, when the court was submitting this verdict to him, said—as appears by the record— that they would not object—or that they could find no fault with the jury finding, if they should find, that the plaintiff and the engineer were fellow servants. They did so find—that they *were* fellow servants. Now the court charges the jury in this connection—assuming, now, that they were fellow servants, that if they found that the engineer, after he became aware or ought to have become aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him, and he was thereby injured, that the company would be responsible for that.

I don't understand how the court came to give that proposition of law. It was entirely irrelevant and covers no issue. There is not a particle of evidence in this case to indicate that the engineer was negligent after he became aware of the plaintiff's peril. The evidence shows that he acted promptly and stopped the engine within four feet of the place where he first learned of the plaintiff's dangerous situation, and there was no ground, upon which the court could saddle the burden of that upon the engineer. There don't seem to be very much reason for the court giving the proposition, if it were confined to the company, but the court, if it gave it at all, should have confined it to the defendant's action; for, the defendant, or its responsible agents, after it learned of the dangerous situation of the plaintiff, if it could have avoided injuring him and did not, the company, of course, would be responsible for that injury although the plaintiff himself were negligent. But we think the whole proposition was irrelevant in this case, and for that reason it was not error in the court to submit it—it had no bearing upon the case either way. The jury found that this man was a fellow servant, and that the sole proximate cause of the injury was the negligence of the company in not furnishing two men to run the engine, and in sending it out there with only one.

For these reasons, we think that the charge of the court was correct; that is that there was no error to the prejudice of the plaintiff in error and that the verdict is sustained by the evidence. Nothing was said in argument about the amount of it. It is a large sum but we cannot say from the evidence that he was not entitled to receive that sum. **The**

man has suffered much; there was more than a year of very severe suffering and a great deal of trouble afterwards. He was earning $70 per month at the time he was injured and he was 28 years old. He has lost his limb, and we will not say that the amount given by the jury was too large. This judgment will have to be affirmed. ·

*Alexander Smith,* Attorney for Plaintiff in Error.

*Brumback & Thatcher,* for Defendant in Error.