## ORRIN J. EASTMAN v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Railroad companies—Failure to block switch—Injury to employé— Contributory negligence—Violation of rule— Conduct of counsel.*

1. The duty imposed upon railroad companies by 3 How. Stat. § 3397a, so to adjust, fill, or block the switches on their roads as to prevent the feet of employés or other persons from being caught therein, is not satisfied by the adoption of a method which the use of the road renders ineffectual within two or three days.

2. Stepping between moving cars to uncouple them is not, as a matter of law, negligence, but the question is one for the jury.

3. It was held in *Hunn v. Railroad Co.,* 78 Mich. 526, that it was competent to show what was usually and habitually done in the running of trains, because, if a railroad company permitted a certain course of conduct, it ought not to be allowed to hold its employés to the very letter of its rules to shield itself from liability for what it had tacitly permitted.

4. The statements of the plaintiff in a personal injury case as to the manner of the accident, if inconsistent with his testimony on that subject, go to the credibility of the testimony, and are for the jury; citing *King v. Lumber Co.,* 93 Mich. 172.

5. Exceptions to improper remarks of counsel for the plaintiff in a personal injury case in addressing the jury, which were provoked by the course taken by the defendant's counsel upon the trial in respect to the matter commented upon, will not

| | |
|---|---|
| 101 | 597 |
| 114 | 202 |
| 101 | 597 |
| 121 | 217 |
| 101 | 597 |
| 124 | 483 |
| 101 | 597 |
| 125 | 397 |
| 101 | 597 |
| d127 | 204 |
| 101 | 597 |
| s60NW | 311 |
| 129 | 399 |
| 101 | 597 |
| s60NW | 309 |
| 132 | 4 51 |
| 133 | 3581 |
| 133 | 3582 |

be sustained, unless it appears quite plainly that the verdict was influenced by said remarks; citing *Sweet v. Railroad Co.*, 87 Mich. 559.

Error to Jackson.   (Peck, J.)   Argued May 1, 1894. Decided September 25, 1894.

Negligence case.   Defendant brings error.   Affirmed. The facts are stated in the opinion.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*Barkworth & Blair*, for plaintiff.

McGRATH, C. J.   Plaintiff, while engaged in uncoupling cars in the defendant's yard, and while between moving cars for that purpose, got his foot caught in a stub switch, and was seriously injured.

3 How. Stat. § 3397a, provides that all railroad companies "shall and are hereby required   *   *   *   to so adjust, fill, or block the frogs, switches, and guard rails on their roads, in all yards, divisional and terminal stations, and where trains are made up, as to prevent the feet of employés or other persons from being caught therein."

Defendant insists that a verdict should have been directed in its favor because—

1. Plaintiff failed to prove that the switch was not properly blocked.
2. He failed to prove that he caught his foot in that part of the switch that could be blocked.
3. He failed to prove that he was in the exercise of due and proper care.
4. He voluntarily violated the rules of the company and his contract with the company.
5. He needlessly exposed himself to extra hazard by stepping between the cars (if he was to go between them at all) just as he was coming to the switch, when he

could just as well have waited until the switch and block-
ing were past.

The method of blocking this particular switch was by
inserting between the stationary rails a piece of wood
about two inches thick, chamfered off slightly on the cor-
ners so as to allow it to be run in between the head and
foot of the rails. The surface of the blocking would be
about an inch and a quarter below the surface of the rails,
and half an inch below the under side of the head
of the rail. It does not appear when this blocking
was placed in position. The defendant's roadmaster testi-
fied that the flanges of the car wheels would constantly
wear the blocking until it got beyond their reach; that
frequently the blocking was split the same day that it was
put in; and that in the course of two or three days the
blocking would be worn down, through its entire length,
so that its surface would be practically level with the head-
chair, which was two inches below the surface of the rail,
and an inch and a quarter below the bottom of the head
of the rail.

The object of the blocking is, of course, to prevent the
foot or boot from getting below the flanges or projecting
heads of the rails. The testimony tended to show that
the method adopted for blocking this switch was defective,
for the reasons given by the defendant's roadmaster; that
other methods were in common use, which were simple,
inexpensive, and efficient, the blocks being constructed
with a grooved or guttered surface so as to allow for the
passage, without interference, of the car-wheel flanges,
furring out that part of the rail which is below the head,
and making it flush with the edge of the head of the rail.
The testimony further tended to show that the surface of
the block at the time of the injury was from two to three
inches below the surface of the rails, and there was
abundant testimony to show that plaintiff's foot was

actually caught between the rails, and that, in consequence, plaintiff was struck and thrown down.   Dr. Pratt, a physician, testified that soon after the accident he examined the blocking.   He says:

"There was a block there which was apparently very old, although I presume sound; that is, it was covered with grease and dirt.   But it struck me that it was very low down; that is, I put my heel between the rails,—my shoe.   My shoe could not catch, but it went down a good ways, so that if there was any flange on the heel it would probably have caught.   My heel would go down between the rails most any point with the shoe I had on, but it would not catch.   It seemed to me that the blocking was pretty low.   I know nothing about them, I am sure,— how it should be; but it seemed to be ample room to catch a heel anywheres along there, especially of a rubber boot.

"I examined the boot which Eastman wore.   It gave evidence of the heel having been—   The heel had been worn down very much on the outer side, and the heel had been, evidently by that accident, torn about two-thirds off from the outside.   This part was all loose.   The rubber was perfectly fresh; showed that it had been torn recently. It didn't have any appearance as you see now.   It was perfectly black, like you find it in a fresh tear of the rubber.   There were scratch lines on this side and that side of the boot, as though by some way the boot had been scraped along there; and I think that that boot is all right, just as I saw it there, except, of course, the markings are gone.   The heel of the boot was torn about two-thirds off from the outer side, but still attached about one-third of its surface.   *   *   *   *   *   *   *   *   * ·   *   *

"The heel of my shoe seemed to go down at least two and a half or three inches."

The footings of the ends of the two stationary rails are covered by what is termed a "head-chair," which is about three inches wide and fifteen inches long, and is laid parallel with the tie.   Between the rails this head-chair presents a convex surface, which rises to a point two inches below the surface of the rails.   This head-chair prevented the blocking from reaching the ends of the rails, leaving a space of about two inches and a quarter

which was unblocked. It was contended by the defendant that it was useless to block over the head-chair, because the car-wheel flanges would cut out the blocking. The testimony tended to show, however, that it was unnecessary that the head-chair should be so constructed as to interfere with the blocking; that head-chairs in common use, made of iron with a flat surface, were equally as efficient, and admitted of the method of blocking heretofore suggested; and that the presence of the head-chair in use did not necessarily prevent the furring of the rails.

The defendant's testimony tended to show that plaintiff was walking backward towards the ends of these stationary rails, and that his foot slipped in between the ends of the rails over the head-chair. Plaintiff's testimony, however, clearly tended to show that his foot was caught at a point over the blocking, and that he was not walking backward when his foot was caught. The court instructed the jury that if he was walking backward at that time he was guilty of contributory negligence, and could not recover.

The testimony tended to show that there were about two inches of snow on the ground; that there was a frog 58 feet north, and another stub switch 56 feet south, of this stub switch; that the cars were moving at the rate of between four and five miles an hour; that plaintiff put one foot between the rails, and attempted to draw the pin; that the pin had a nub on the lower end; that the pin stuck; that plaintiff then tried the other pin, but that was fast; that he then brought the other foot between the rails, and attempted to draw the first pin tried; that after the injury the uncoupling had not been made; that the cars could not ordinarily be uncoupled when standing; that the work could not be done, in the absence of other appliances, without stepping between the cars.

The defendant's yard conductor at the time testified that he was plaintiff's superior at the time; that he was present;

that the work was being done by plaintiff in the ordinary and customary manner; that "Mr. Eastman was doing it as I myself would have done it;" that the blocking was covered with snow; that it was customary in the yard to step between the cars while in motion to uncouple them; that "it is not impossible to uncouple cars when they happen to be on a down grade or a dead level, but, if the grade is the other way, then you could not uncouple the hind car very well, unless moving enough to get slack. It is customary among railroad men to pull the pin while the train is in motion. That custom has continued as long as I have been in the yard. We do it in order to get our work done, and we could not do the work that is expected of us if obliged literally to obey the rules not to step between cars while in motion."

These railroad yards are filled with frogs and switches. It is the evident purpose of the statute to protect these very men in the performance of their work. Their duties bring them into the vicinity of, and over and upon, these switches. It is clear that the time that intervened between the first attempt to pull the coupling pin brought plaintiff upon this switch. It would take but a few seconds for the train to pass from the frog to the switch or from switch to switch. It was the defendant's duty to adopt some reasonably safe and efficient system of blocking its switches. The duty is imposed by statute, and the statute is not satisfied by the adoption of a method which the use of the road renders ineffectual within two or three days.

Stepping between cars while in motion to uncouple them is not, as a matter of law, negligence, but the question is one for the jury. *Gardner v. Railroad Co.*, 58 Mich. 592; *Ashman v. Railroad Co.*, 90 Id. 567. It was held in *Hunn v. Railroad Co.*, 78 Mich. 526, that it was competent to show what was usually and habitually done in the running of trains, because, if a company permitted a cer-

tain course of conduct, it ought not to be allowed to hold its employés to the very letter of its rules to shield itself from liability for what it had tacitly permitted. See, also, *Ashman v. Railroad Co., supra.* In *Grand v. Railroad Co.,* 83 Mich. 564, the switch was what is known as a "split switch," and could not be blocked. In the present case the cars were moving slowly. Not only did it appear that the work was being done in the manner in which it had been done for years, but it was done in the only way that the work required of the switchmen could be done. Indeed, this testimony is not disputed. In several of the cases cited by defendant's counsel in which it is held that the switchman was guilty of negligence in acting in violation of the rule, a coupling stick was provided by the company, and its use was enjoined. Here none was provided, nor was its use suggested by the rule.

It is insisted that the plaintiff had, after the accident, made certain statements or admissions that he was walking backward at the time that his foot got caught, which were inconsistent with his testimony. Such statements go to the credibility of his testimony merely, and are for the jury. *King v. Lumber Co.,* 93 Mich. 172. There was testimony as tô the footprints in the snow that tended to corroborate the testimony given by plaintiff.

Exceptions are urged to remarks of counsel in addressing the jury. Counsel are entitled to give their views as to the amount of damages that should be awarded. They are also entitled to comment upon the circumstances under which certain statements were alleged to have been made by the injured party,—his physical condition at the time. Counsel, however, went further, but we are satisfied that the remarks were provoked by the course taken by defendant's counsel upon the trial in respect to the matter commented upon. *Sweet v. Railroad Co.,* 87 Mich. 559.

A motion for a new trial was made, but, giving to the

statute relating to the review of the decision of trial courts the construction contended for by defendant's counsel, we do not think that the verdict should be disturbed. We have examined the record with care, and have discussed the facts quite fully, and are not prepared to say that the verdict was unwarranted. The learned trial judge instructed the jury fully and clearly as to the law, and we find no error in the record.

The judgment is affirmed.

The other Justices concurred.