FLUHRER *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. RAILROADS—BRAKEMEN—DEFECTIVE PLANKING AT CROSSING—ASSUMPTION OF RISK.

It cannot be said, as a matter of law, that a brakeman should have knowledge of, and assumes the risk of, defects in the planking at a crossing on the line of the road, merely because the particular crossing is one of 40 at which he has done switching during seven months' service.

2. SAME—VIOLATION OF RULES—CONTRACT OF EMPLOYMENT.

Where a brakeman, in his contract of employment, which was signed by him, acknowledged the receipt of a copy of the rules of the company, and stated that he had read the same and would be governed thereby, such contract constitutes a defense to an action to recover for his death, resulting from injuries received while attempting to uncouple moving cars, in direct violation of a rule, unless the plaintiff shows that

the rule had been virtually abrogated by the company, by sanctioning its customary violation by employés.

3. SAME—COMPANY'S KNOWLEDGE OF VIOLATION—DEFENSES.

Mere proof of a custom of brakemen to go between moving cars to uncouple them, in violation of the rules of the company, is insufficient to preclude the company from relying upon such violation as a defense to an action for injuries received by a brakeman while so engaged, but, to have such effect, it must be shown that the custom was so universal and notorious that the company may be presumed to have known of and ratified it.

4. SAME—NOTICE OF DEFECT—REPAIRS.

Where a defect in the planking over a railroad crossing, by reason of which a brakeman was injured while coupling cars, had existed for so long a time that the company may be presumed to have had notice of it, the fact that the section foreman was furnished with materials, and instructed generally to make repairs when needed, does not relieve the company from the charge of negligence.

5. SAME—DAMAGES—EXCESSIVE AWARD.

Damages awarded to the wife of a railroad employé, killed through the company's negligence at a time when he was earning a monthly wage of $45, upon the basis of $30 per month as the amount of which his death deprived her, cannot be said, as a matter of law, to be excessive. GRANT, C. J., and LONG, J., dissenting.

Error to Lenawee; Chester, J. Submitted February 9, 1899. Decided September 19, 1899.

Case by Mary Fluhrer, administratrix of the estate of John M. Fluhrer, deceased, against the Lake Shore & Michigan Southern Railway Company, for negligently causing the death of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Reversed.

John M. Fluhrer, deceased, was a brakeman on the defendant's road between Adrian and Jackson. He was killed while switching at defendant's yard at Tecumseh, July 14, 1893, at a highway crossing. The defendant had three tracks at this crossing. The highway was planked between the tracks in the usual manner. Mr.

Fluhrer was head brakeman. The engine had two cars attached, and had passed from one track onto the other. It was his duty to turn the switch, and then give notice to the engineer to back up. This he did. As the engine commenced to back, he went forward to meet it, stepped between the two box cars upon the crossing to uncouple them, and in doing so was killed. The negligence charged is the failure to keep this planking in proper condition· It is claimed that the plank next to the rail had become worn away or split off so as to leave a space from 3 to $3\frac{1}{2}$ inches wide between the rail and the plank, so that, when Mr. Fluhrer stepped in, his foot got caught in this space, and caused the accident. Plaintiff recovered a verdict and judgment for $6,900.

C. E. Weaver ( George C. Greene and O. G. Getzen-Danner, of counsel ), for appellant.

Watts, Bean & Smith, for appellee.

GRANT, C. J. (after stating the facts). Defendant requested the court to direct a verdict for it, and this request presents the first assignment of error.

1. It is urged that there is no proof that the decedent's foot was caught in the crack. The shoe was produced in evidence, made an exhibit, and returned to this court. It shows that in some manner it was run over by the wheel. Plaintiff gave testimony, from persons who were a short distance away, and reached the place of the accident within a few moments, that the shoe was found in the crack· The defendant gave evidence, from the engineer, conductor, and others, that they were first upon the scene, and that the shoe was outside the track. It has no marks of blood upon it. The foot and ankle were crushed. If, therefore, the foot was in the shoe at the time the latter was run over, it would have been covered with blood, but was not. The only other inference would be that the deceased pulled his foot from the shoe before the wheel struck it. We think this question was properly left to the jury.

2. It is urged that deceased assumed the risk, and that, if the defect was such as is claimed, it must or should have been known to him. For some time he had been a brakeman over this branch, and had done switching at this crossing and about 40 others. This is not like the case of *Gleason* v. *Railroad Co.*, 159 Mass. 68, where the plaintiff had been working in the same yard for six weeks, during which time the planking had remained in the same condition. Nor is it like the case of *Ragon* v. *Railway Co.*, 97 Mich. 265 (37 Am. St. Rep. 336), where the side track had not been ballasted, while plaintiff supposed it was smooth, but he had passed the place frequently in the discharge of his duties. Those cases are so different from this that we refrain from discussing the point further. It cannot be said, as a matter of law, that a brakeman must know the condition of the planking at every crossing along the line of the road.

3. The most difficult question is whether negligence is chargeable to the deceased in going between the moving cars to uncouple them. The deceased was an experienced brakeman, and had been in the employ of the company as brakeman for seven months; was furnished with a copy of its rules December 28, 1892, and signed a contract in which he acknowledged to have received and read them, and especially "the caution and rules numbers 601, 602, and 603, as shown on back hereof." That portion of rule 602 applicable here reads as follows:

"Jumping on or off trains or engines when in motion, getting between cars in motion to uncouple them, and all similar acts, are dangerous. All employés are warned that, if they commit them, it will be at their own peril and risk."

In this contract he agreed as follows:

"I will, so long as I remain in its service, faithfully respect and obey all said orders, rules, and regulations, and all others which may be adopted and of which I may have notice; and I do further agree that I will, for myself, in all cases, before exposing myself in working or in

being on the track or grounds of the company, or in working with, or being in any manner on or with, its cars, engines, machinery, or tools, examine, for my own safety, the condition of all machinery, tools, tracks, cars, engines, or whatever I may undertake to work upon or with, before I make use of or expose myself on or with the same, so as to ascertain, so far as I reasonably can, their condition and soundness, and that I will promptly report, either to the superintendent of the company, or to its agent who may be my immediate superior officer, any defect in any track, machinery, tools, or property of the company affecting the safety of any one using or operating upon or with the same. The object of this agreement being—*First*, to protect me from suffering personal injury from any cause; *second*, that while the company will be responsible to me for the discharge of all its duties and obligations to me, and for any fault or neglect of its own, or of its board of directors or general officers, which are the proximate cause of injury, yet it will not be responsible to me for the consequences of my own fault or neglect, or that of any other employés of the company, whether they, or either of them, are superior to me in authority or not. It being expressly agreed on the part of the company that it is my right and duty, under all circumstances, to take sufficient time, before exposing myself, to make such examination as I have here agreed to, and to refuse to obey any order that would expose me to danger."

Defendant preferred the instruction, which was refused, that decedent's attempt to uncouple the cars while in motion barred recovery, and the alternative instruction that it was the duty of the decedent to obey this rule, and if he did not, but went between the moving cars and attempted to uncouple them while in motion, and thereby received the injuries which caused his death, then this conduct was in violation of the rule, and plaintiff could not recover. It is well settled that a violation of the rules of the company will defeat recovery. The exception to this is where the company itself has sanctioned the custom of its employés to act in violation of the rules, and has thus virtually abrogated them. This exception is based upon the theory that it would be unjust in employers to establish rules, and then sanction their violation, and

interpose such violation as a defense. *Hunn* v. *Railroad Co.*, 78 Mich. 513, 526 (7 L. R. A. 500); *Eastman* v. *Railway Co.*, 101 Mich. 597, 602. Fairly construed, the above rule is notice to brakemen not to enter between the cars while in motion, to uncouple them, and an agreement not to do so. The danger in doing so is apparent. Only when this rule is violated by brakemen so universally and notoriously that it is a fair inference that the company sanctioned and approved the violation is the company barred from this defense. The court instructed the jury that if they believed that the motion of the cars was so slow that it was not negligence to pass between them to uncouple them, and that such was the usual custom of brakemen under like circumstances, then such act would not necessarily prevent recovery by the plaintiff. There was evidence tending to show that it was usual and customary for brakemen to pass between the cars while in motion, to uncouple them. The case was not submitted to the jury upon the theory that the company had sanctioned a violation of this rule. The question was not referred to in the instructions. Under the instructions given, this rule was virtually thrown out of consideration, and the jury permitted to find that, if it was customary for brakemen to do this, then it was not negligence on the part of the deceased. Custom alone is not sufficient. It was held in *Glover* v. *Scotten*, 82 Mich. 369, that where a safe place was provided for switchmen to ride, and they chose to ride in a more dangerous one, and always did so, that would not relieve them from contributory negligence. When the defendant had entered into the contract with the deceased, in which he acknowledged the receipt of a copy of these rules, and agreed to abide by them, it had met the plaintiff's case, even though it was not negligence *per se* to go between the cars when in motion. The *onus probandi* was then cast upon the plaintiff to show that the company sanctioned a departure from the rule by a custom so universal and notorious that the company was presumed to have had knowledge of it and to have ratified

it. This is an important feature of the case, and was not, we think, by the instructions, properly submitted to the jury.

Counsel for plaintiff urge that the evidence does not show that Fluhrer ever read or saw these rules. The production of the duplicate contract signed by him was *prima facie* proof that he had received and read them. If there was a conflict of testimony on this point, it should be submitted to the jury under proper instructions.

4. We think the verdict excessive. It is evident that the jury based it upon the claimed testimony that the deceased had contributed to his wife $30 per month for her support and maintenance, and would have continued to do so during the entire expectancy of his life according to the tables. The testimony does not show that he contributed to her $30 out of his earnings of $45 per month. This $30, as testified by the plaintiff, included rent and household expenses both for herself and husband. It would be absurd to hold that a husband gave his wife $30, and that he lived upon $15. It is further apparent that the jury estimated the damages upon the compound discount table which was introduced in evidence, subject to objection, at 6 per cent. per annum. $6,900 at 6 per cent. would yield $414. This would give plaintiff more money annually than she could by any possibility have received from her husband. If it be said that money cannot now be loaned at 6 per cent., it should be replied that annuities should not, therefore, be computed at 6 per cent. This court, in an opinion written by Justice CAMPBELL in *Staal* v. *Railroad Co.*, 57 Mich. 239, said, "$5,000 seems to be a large verdict, but, when we consider how it is to be apportioned, it loses some of its apparent magnitude." There were in that case three minor children. Of the amount recovered, $1,666.66 went to the widow, and $1,-111.11 to each of the children. It was also said in that case, "Courts should not allow juries to give anything that goes beyond a fair pecuniary compensation, based on the actual pecuniary loss." See, also, *Nelson* v. *Railway Co.*, 104 Mich. 582.

5. Error is assigned upon the refusal to instruct the jury that the section foreman was furnished with the necessary material to renew the planking on this and other crossings whenever the same was necessary; that, therefore, the railway company had fulfilled its duty in that regard; and that, if said foreman neglected to repair the planking when needed, such negligent act was the act of a fellow-servant.   The only testimony upon this point was from the road-master, who testified that he kept the section foreman at Tecumseh supplied with raw material for the renewal of the planking from time to time, and that his instructions were to watch those things, and repair them as needed.   Counsel rely upon *Gardner* v. *Railroad Co.*, 58 Mich. 584, to support this contention.   The differences between the facts in that case and this are apparent, and I will not take time to point them out.   The request leaves out one important element, viz., the existence of this defect for so long a time that the defendant may be presumed to have had notice of it.   *Retan* v. *Railway Co.*, 94 Mich. 146.

Judgment reversed, and new trial ordered.

LONG, J., concurred with GRANT, C. J.

HOOKER, J.   I concur in the above, except on the question of damages.

MONTGOMERY and MOORE, JJ., concurred with HOOKER, J.