NICHOLS v. CHICAGO & WEST MICHIGAN RAILWAY CO.

1. RAILROADS — COUPLINGS — VIOLATION OF RULE — COMPANY'S KNOWLEDGE—WAIVER.

Mere proof of a custom of brakemen, in making couplings, to guide the link with the hand instead of a stick, in violation of the rules of the company, is insufficient to preclude the company from relying upon such violation as a defense to an action for injuries received by a brakeman while so engaged, but, to have such effect, it must be shown that the custom was so universal and notorious that the company may be presumed to have known of and ratified it.

2. SAME—SAFETY COUPLERS—INTERSTATE COMMERCE COMMISSION—REPORTS—EVIDENCE.

Act Cong. March 2, 1893 (27 Stat. 531), § 2, provides that after January 1, 1898, it shall be unlawful for any carrier to haul on its line any car used in interstate commerce not equipped with automatic couplers. Section 7 provides that the time for compliance with the act may be extended by the interstate commerce commission. The Interstate Commerce Act (24 Stat. 384), § 14, as amended by Act March 2, 1889 (25 Stat. 859), § 4, provides that the commission may provide for the publication of its reports and decisions, and that its authorized publications shall be evidence in all courts

without further authentication. *Held,* that the exclusion, for lack of authentication, of a pamphlet decision, report, and order of the commission, signed by the secretary, extending the time within which defendant must comply with the act of 1893 as to automatic couplers, was error, since the report was within the provisions of the act of 1889.

Error to Kent; Adsit, J. Submitted October 11, 1900. Decided December 19, 1900.

Case by Thomas J. Nichols against the Chicago & West Michigan Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Smith, Nims, Hoyt & Erwin ( Frederick W. Stevens,* of counsel ), for appellant.

*McCormick & La Grou,* for appellee.

MOORE, J. The plaintiff recovered a judgment against defendant for personal injuries received by him while acting as brakeman. The defendant brings the case here by writ of error. The plaintiff, a married man, about 28 years old, entered the employ of the defendant as freight brakeman in September, 1898. About seven weeks thereafter, after making a coupling between a car having a safety coupler and a car, which he claims belonged to the Baltimore & Ohio road, that did not have a safety coupler, but a pin and link coupler, he attempted to couple the last-described car to another car where the coupling had to be done with a pin and link. He claims that, when he attempted to make the coupling, he learned for the first time the car was without a grab-iron or handhold, and, as he reached over to put the pin down, he slipped, and his arm was caught between the deadwoods.

A great many questions are raised by counsel. In the main the case was carefully tried, and we do not think it necessary to discuss all of the questions raised. In the declaration of the plaintiff, and upon the trial, it was

claimed the defendant was negligent in running the cars upon its road which caused the accident, when they were not furnished with such safety couplers as are required by the provisions of section 5511, 2 Comp. Laws 1897. It was also claimed it did not comply with the provisions of an act of Congress, which will be referred to later.

When the plaintiff entered the employ of the defendant, a copy of the rules of the defendant company was furnished him. One of them reads as follows:

"All persons entering into or remaining in the service of this company are warned that the business is hazardous, and that in accepting or retaining employment they must assume the ordinary risks attending it. Each employé is expected and required to look after and be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, especially in the switching of cars and in all movements of trains. Stepping upon the front of approaching engines, jumping on or off trains when moving at high speed, going between cars in motion to couple or uncouple them, coupling by hand when it is practicable to use a stick or pin for guiding the link, and all similar imprudences, are dangerous, and in violation of duty, and are strictly prohibited. Employés are warned that if they commit them it will be at their own peril and risk. Employés of every rank and grade are warned to see for themselves, before using them, that the machinery or tools which they are expected to use are in proper condition, or see that they are put so before using."

It is claimed the plaintiff, inasmuch as he acknowledged the receipt of a copy of the rules, and agreed to observe them and be governed by them, is bound by his agreement; and, as it was not necessary to couple the cars in the way he did it, but as there was a safer way to do it, he cannot recover.

On the part of the plaintiff it is claimed that he coupled the cars according to the universal custom of the brakemen under like circumstances, and that there was a waiver of the rules and his agreement on the part of the company. He offered testimony tending to prove his con-

tention in relation to the custom.   The court charged the jury upon that feature of the case as follows:

"Among other circumstances proved in this case is an alleged custom on defendant's road that the company permitted cars to be coupled in the manner in which plaintiff attempted to couple the one or ones in question, not equipped with safety devices.   If that was true, and it conflicted with plaintiff's contract, it was a waiver on defendant's part of plaintiff's agreement not to do so,—not to enter into such dangerous employment, I mean,—if the agreement is construed to conflict with this custom."

The rule applicable to such cases has been stated in this court in *Fluhrer* v. *Railway Co.*, 121 Mich. 212 (80 N. W. 23), as follows:

"It is well settled that a violation of the rules of the company will defeat recovery.   The exception to this is where the company itself has sanctioned the custom of its employés to act in violation of the rules, and has thus virtually abrogated them.   This exception is based upon the theory that it would be unjust in employers to establish rules, and then sanction their violation, and interpose such violation as a defense.   *Hunn* v. *Railroad Co.*, 78 Mich. 513, 526 (44 N. W. 502, 7 L. R. A. 500); *Eastman* v. *Railway Co.*, 101 Mich. 597, 602 (60 N. W. 309).   Fairly construed, the above rule is notice to brakemen not to enter between the cars while in motion, to uncouple them, and an agreement not to do so.   The danger in doing so is apparent.   Only when this rule is violated by brakemen so universally and notoriously that it is a fair inference that the company sanctioned and approved the violation is the company barred from this defense.   The court instructed the jury that if they believed that the motion of the cars was so slow that it was not negligence to pass between them to uncouple them, and that such was the usual custom of brakemen under like circumstances, then such act would not necessarily prevent recovery by the plaintiff.   There was evidence tending to show that it was usual and customary for brakemen to pass between the cars while in motion, to uncouple them.   The case was not submitted to the jury upon the theory that the company had sanctioned a violation of this rule.   The question was not referred to in the instructions.   Under the instructions given, this rule was

virtually thrown out of consideration, and the jury permitted to find that, if it was customary for brakemen to do this, then it was not negligence on the part of the deceased. Custom alone is not sufficient. It was held in *Glover* v. *Scotten*, 82 Mich. 369 (46 N. W. 936), that where a safe place was provided for switchmen to ride, and they chose to ride in a more dangerous one, and always did so, that would not relieve them from contributory negligence. When the defendant had entered into the contract with the deceased, in which he acknowledged the receipt of a copy of these rules, and agreed to abide by them, it had met the plaintiff's case, even though it was not negligence *per se* to go between the cars when in motion. The *onus probandi* was then cast upon the plaintiff to show that the company sanctioned a departure from the rule by a custom so universal and notorious that the company was presumed to have had knowledge of it and to have ratified it. This is an important feature of the case, and was not, we think, by the instructions, properly submitted to the jury."

We think the charge failed to state the rule correctly, as it did not inform the jury the custom should have been shown to have been so universal and notorious that the company is presumed to know it. The charge also spoke of the custom as proved, when it was for the jury to determine from the evidence whether the custom was proven or not.

It was claimed on the part of the plaintiff that an act of Congress (27 Stat. 531, § 2) had not been observed by defendant. The section reads as follows:

"That on and after the first day of January, 1898, it shall be unlawful for any common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 7 of the same act reads as follows:

"That the interstate commerce commission may from time to time, upon full hearing and for good cause, extend the period within which any common carrier shall comply with the provisions of this act."

It was the claim of the defendant an extension of time had been granted to it, and also to the road whose car caused the injury, in which to comply with the provisions of the act. To prove this contention, it offered in evidence a pamphlet which purported to be a report of the interstate commerce commission, which report the circuit judge rejected. Section 14 of the interstate commerce act, as amended March 2, 1889 (25 Stat. 859), contains the following provision:

"The commission may provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use, and such authorized publications shall be competent evidence of the reports and decisions of the commission therein contained, in all courts of the United States and of the several States, without any further proof or authentication thereof."

The pamphlet offered in evidence purported to be a decision of the commission made December 23, 1897, and their report and order. It is signed: "By the Commission. EDW. A. MOSELEY, Secretary." We think the report offered in evidence came within the provisions of the statute, and should have been received.

We do not deem it necessary to discuss the other questions raised, for the reason that those assignments of error which we deem to be well taken grow out of the two errors which we have already discussed, and are not likely to occur again.

The judgment of the court below is reversed, and a new trial is ordered.

MONTGOMERY, C. J., HOOKER and GRANT, JJ., concurred. LONG, J., did not sit.