BALL *v.* HAUSER.

FREIGHT ELEVATOR—INJURY TO PASSENGER—NEGLIGENCE—ASSUMP-
TION OF RISK.

Building contractors, operating a freight elevator for the
hoisting of materials, posted thereon a notice forbidding all
persons to ride on the elevator, and warning violators of the
rule that they rode at their own risk. The elevator operator
and another employé were instructed to warn off persons
attempting to ride, and frequently did so. Plaintiff, an
employé of a subcontractor, and some other workmen, occa-
sionally rode, to the knowledge of one contractor, who did
not object; and the contractor himself rode on the elevator.
It was occasionally necessary for men to ride up with bulky
articles. After riding up with a load of materials, plaintiff
got on the elevator to ride down, and it fell, and injured him.
*Held,* that the circumstances did not show a waiver by the
contractors of the rule against riding, but that plaintiff as-
sumed the risk in accordance with the posted notice.

Error to Kent; Wolcott, J. Submitted December 12,
1901. Decided February 11, 1902.

Case by Oscar F. Ball against Charles A. Hauser and
others for personal injuries. From a judgment for de-
fendants on verdict directed by the court, plaintiff brings
error. Affirmed.

*E. J. Adams* (*N. J. Brown,* of counsel), for appel-
lant.

*L. E. Carroll* and *Clapperton & Owen,* for appellees.

HOOKER, C. J. The defendants contracted to erect a
large building in Grand Rapids. They sublet the carpen-
ter work to a firm named Nordella & Owen, and the plain-
tiff was foreman for that firm. To raise mortar, stone,
brick, iron, and other material, the defendants employed
one Bush to put up and operate an elevator, and he per-

sonally ran the engine which furnished the necessary power during the time that the elevator was used. There is nothing to show that Nordella & Owen had a contract right to use this elevator. They had a derrick of their own, and a hoist, consisting of blocks and tackle, and there was access to the various parts of the building by ladders. It appears, however, that the defendants permitted Bush to use the elevator to raise material for them when it was not employed for the purposes of the defendants. Upon the cross-beam of the elevator was the following printed notice, viz. :

"NOTICE. .

"This elevator is for freight only. All persons strictly forbidden to ride hereon. Any one acting contrary to this order does so at his own risk."

The elevator consisted of a cross-beam to which a platform made of planks was suspended by iron rods. It was raised by winding the pulley rope over a drum operated by the steam engine. Wheelbarrows loaded with materials were run upon the platform, and raised, there being a man at the top to receive material thus hoisted, and he had charge at the top, while Bush managed it below. In lowering the elevator, the drum was usually disconnected from the engine, and allowed to run loose, being controlled by a friction brake, operated by Bush. Where an exceptionally heavy load was being lowered, the engine was not disconnected, being run backward by the weight of the load, though the brake still had to be used, lest it run away with the engine, no steam being used.

The plaintiff had some sash to carry up and distribute to the three floors, and went up with them on the elevator. On his return the brake failed to hold the elevator, and it descended rapidly to the ground, whereby plaintiff was injured in the feet and legs. A subsequent investigation showed some grease between the drum and the leather of the brake, which prevented its usual effect. The action was brought to recover damages for the injury. On behalf of the plaintiff it is claimed that the defendants were negligent in failing to seasonably inspect the brake. The

learned circuit judge directed a verdict for the defendants upon the grounds that the elevator was not provided for men to ride upon, and that plaintiff, having full notice, assumed the risk; that the proofs failed to show negligence on the part of the defendants, and did show it on the part of the plaintiff. The plaintiff has appealed.

The notice is not ambiguous. It plainly states that it is for freight only. It forbids "all *persons*" to ride,—not all visitors, all strangers, nor all workmen, but all persons, —and states further that *any one* acting contrary to the order must do it at his own risk. It is contended that this notice should be construed as intended only for strangers or visitors. It is said that the elevator was in use on a large three-story building, and that access by the ladders shown to be provided would be slow and inconvenient; also that men were in the habit of riding, and had a signal which indicated to the engineer in charge when a man was going to ride, and that the defendants rode on the elevator and made use of the signal; and it is asserted that the testimony shows a custom to use the elevator in disregard of the notice, which was acquiesced in by the defendants.

We have held in several cases involving the handling of railroad trains that necessary and habitual disregard of rules, known to the employer, might justify the conclusion that such disregard had the sanction of the company, and plaintiffs have been permitted to recover upon the ground that the rule had been abrogated, and that it would be unjust to hold one bound by a rule which his employer knew that he could not comply with, and that he did not expect him to obey. Thus, in *Hunn* v. *Railroad Co.*, 78 Mich. 526 (44 N. W. 502, 7 L. R. A. 500), there was evidence that a rule as to speed was impracticable if schedule time was made, and was habitually disregarded, under circumstances which indicated knowledge, and an expectation that the employés would have some latitude of discretion in complying with it.

In *Eastman* v. *Railway Co.*, 101 Mich. 603 (60 N. W. 311), the court said:

"In the present case the cars were moving slowly. Not only did it appear that the work was being done in the manner in which it had been done for years, but it was done in the only way that the work required of the switchman could be done. Indeed, this testimony is not disputed."

In *Fluhrer* v. *Railway Co.*, 121 Mich. 216 (80 N. W. 24), it was said by GRANT, C. J.:

"It is well settled that a violation of the rules of the company will defeat recovery. The exception to this is where the company itself has sanctioned the custom of its employés to act in violation of the rules, and has thus virtually abrogated them. This exception is based upon the theory that it would be unjust in employers to establish rules, and then sanction their violation, and interpose such violation as a defense. Fairly construed, the above rule is notice to brakemen not to enter between the cars, while in motion, to uncouple them, and an agreement not to do so. The danger in doing so is apparent. Only when this rule is violated by brakemen so universally and notoriously that it is a fair inference that the company sanctioned and approved the violation is the company barred from this defense."

Upon a second review of the same case (124 Mich. 482, 83 N. W. 149), we held:

"Where recovery is sought for injuries received by an employé of a railway company while performing his duties in violation of a rule of the company of which he had knowledge, the *onus* is upon the plaintiff to show that the company sanctioned a departure from the rule by a custom so universal and notorious that the company was presumed to have had knowledge of it, and to have ratified it."

Similar language was used in *Nichols* v. *Railway Co.*, 125 Mich. 394 (84 N. W. 470).

Thus far the practice of permitting an employé to disregard a definite and known rule, and recover damages notwithstanding the fact, seems to have been confined to railroad cases in this State. In this case it is sought to apply it to another kind of a case. The exigencies of railroading may be such as to justify an employé in assum-

ing that a rule is abrogated without inquiry of the employer before disregarding it. Whether we should say the same in a case like this may be open to grave doubt. Whatever we might conclude were it necessary to pass upon the question, it is apparent from the cases cited that, even in railroad cases, recovery is permitted only when the testimony shows that the rule has been abrogated, and this may be inferred from the circumstances fairly establishing it. If that rule should be applied to this class of cases, we must inquire whether this proof warrants such a conclusion. The plaintiff claims that his proof does warrant it, because he has shown by testimony that some of the men have been in the habit of riding on the elevator, that one of the defendants had seen it done without remark, that he rode on the elevator himself, and that in taking up some kinds of freight it was necessary that a man should ride.

The fact that some of the men rode down upon the elevator, even if occasionally seen by the defendants without remark, is not inconsistent with the claim that said rule was relied on and not abrogated. Neither does the fact that one of the defendants rode upon it indicate an intention to permit the men to do so. Nor does the fact that it was necessary for men to ride up occasionally with bulky articles, if it was necessary, establish the abrogation of the rule. Even if it could be said to justify the plaintiff in riding up, it does not tend to show a consent that he should unnecessarily ride down in violation of the rule, which he must have understood from the notice, and which, if the testimony of other witnesses is true, he was repeatedly warned against doing. We think the testimony offered does not establish the claim that the defendants sanctioned such use of the elevator. Not only does this testimony not prove it, but much evidence tends to disprove it. The defendants are not shown to have found it necessary to send men up on the elevator with their materials, or that they expected that Nordella & Owen would do so. They stationed a man at the top to receive

material, a part of whose duty it was to warn men against riding down, which he is shown to have done repeatedly. The engineer below performed a similar duty at defendants' direction; and the defendants at different times told men not to ride upon the elevator. The witness Brogden says that he repeatedly told Ball to keep off from it, and that he was in the habit of jumping on while it was in motion. It was the general custom for the men to go up and down on the ladders provided for the purpose. None of these things was disputed, except that Ball denies being warned to keep off, thereby contradicting several witnesses. This denial raised a question of fact as to that point, and we must therefore assume that he was not warned; but that, and the fact that he and others sometimes rode, do not prove that the rule was abrogated by defendants' sanction, nor did it warrant the judge's leaving the question to the jury. The undisputed proof shows that the defendants were insisting upon their rule. It was not their duty to hire men to warn others not to disobey a known direction; yet they did it. One warning would ordinarily be enough; yet these defendants not only kept the printed notice up, and men to enforce it at each end of the route, but themselves sometimes reproved men who still persisted in riding. An employer ought to have some rights which his employés are bound to respect. There is nothing to compel them to afford elevator transportation, or to preclude their providing for carrying freight to the exclusion of passengers without being liable to such as shall insist on riding in violation of instructions. This man knew that, in riding down upon the elevator, the defendants expected him to take the risk. We think that it should be held that he did take it.

Several questions are raised in relation to the exclusion of testimony, but there is no substance in them. If the plaintiff could have shown a necessity to ride up, it would not have tended to prove a necessity or permission to ride down. His misinterpretation of the notice, and conclusion that he could ride because others did, would not prove

the abrogation of the rule, which was plain and generally understood.

It is unnecessary to mention other assignments. The conclusions of the learned judge were correct, and his judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., took no part in the decision.