OVAVEZ *v.* PATRONS' MUTUAL FIRE INSURANCE CO.

1. APPEARANCE—GENERAL APPEARANCE AND ANSWER WAIVES JURISDICTIONAL DEFECT IN VENUE.

Where a bill filed for the reformation of an insurance application and policy and to recover damages for loss by fire alleged that plaintiffs lived in the county in which suit was brought, but in fact they lived in another county, defendant, by appearing generally and answering, waived

Denial of liability by an insurance company as waiver of condition as to arbitration, see note in 15 L. R. A. (N. S.) 1073.

the jurisdictional irregularity; the court having jurisdiction of the subject-matter.[1]

2. INSURANCE—POLICY MAY BE REFORMED BY COURT NOTWITHSTANDING PROVISIONS OF POLICY REQUIRING ARBITRATION OF LOSS.

Although the provisions of the charter of a mutual fire insurance company that no suit at law or in equity may be brought to recover loss are binding on the insured until he has exhausted the remedies provided in his contract, they do not preclude him from applying to a court of equity to reform the contract and make it conform to the real agreement of the parties.[2]

3. SAME—DENIAL OF LIABILITY WAIVES RIGHT TO ARBITRATION.

Where the insurer denied all liability for loss of the contents of a summer kitchen, it waived its right to arbitration under the provisions of its charter, and thereby compelled the insured to invoke the aid of the court in determining its liability.[3]

4. SAME—INSURED RELEASED FROM ARBITRATION PROVISIONS OF POLICY WHERE INSURER ARBITRARILY IGNORED THEM.

Where the insurer did not follow the provisions of the charter in adjusting the loss which it admitted, by appointing a director mutually agreed upon, but, instead, arbitrarily appointed an adjuster who was in its service and who was not a director, insured was released from the conditions of the policy requiring arbitration and had a right to invoke the aid of the court.[4]

5. SAME—POLICY PROPERLY REFORMED TO EXPRESS UNDISPUTED AGREEMENT.

Where it is undisputed that the policy in a mutual fire insurance company was intended to cover the contents of a summer kitchen in which insured lived, the court below properly decreed reformation of the policy to express the undisputed agreement.[5]

Appeal from Gogebic; Driscoll (George O.), J. Submitted October 16, 1925. (Docket No. 94.) Decided December 22, 1925.

Bill by Albert Ovavez and another against the Patrons' Mutual Fire Insurance Company of Michi-

[1]Appearances, 4 C. J. § 53; [2]Insurance, 33 C. J. § 778 [3]Fire Insurance, 26 C. J. § 574; [4]Id., 26 C. J. § 571 (Anno); [5]Id., 26 C. J. § 101.

gan for reformation of a policy of insurance and to recover damages for loss by fire.    From a decree for plaintiffs, defendant appeals.    Affirmed.

*Jones & Patek,* for plaintiffs.

*Kinnane & Leibrand,* for defendant.

McDonald, C. J.    This bill was filed for the reformation of an insurance application and policy and to recover damages from loss by fire.    The plaintiffs own a farm, on which they reside, in Ontonagon county in this State.    At the time they made application for insurance their farm buildings consisted of a barn, a dwelling in the course of construction, and a summer kitchen in which the family were living while the dwelling house was being built, and in which were all their household goods.    In the application and policy the property and amount of insurance is stated as follows:

"Farm and Resident Property—Insured, $1,000, dwelling 30x40 (and bldg. material); insured, $1,000 cont. dwg.; insured $2,000 barn No. 1. 24x70 and bldg. material.
"Other property—Value $1,000; insured $800, building used for summer kitchen."

The policy was issued November 14, 1922.    The summer kitchen and its contents were destroyed by fire on the 29th of October, 1923.    The defendant adjusted the loss on the summer kitchen at $450, but denied any liability for loss of its contents, claiming that the words "insured, $1,000 cont. dwg.," in the policy referred only to the contents of the dwelling which was being constructed.    The plaintiffs claim that all of their household effects were in the summer kitchen and that in making the application it was expressly agreed with the agent that the insurance was to cover its contents; that the agent so under-

stood it and either through carelessness or mistake erroneously made the application read contents of dwelling instead of contents of the summer kitchen. They ask to have the application and policy reformed so as to express the real agreement.    On the hearing the court decreed a reformation and fixed the plaintiffs' loss on the building and contents at $1,800.    The defendant has appealed.

The record presents the following questions:

Did the court have jurisdiction to hear the cause? The plaintiffs lived in Ontonagon county.    The suit was begun in Gogebic county.    The bill alleged that the plaintiffs resided in Gogebic county.    The defendant appeared generally and in its answer admitted the residence of the plaintiffs to be as alleged in the bill. In the testimony it developed that they lived in Ontonagon county.    Defendant then for the first time challenged the jurisdiction of the court.

"Jurisdictional irregularities are waived by a general appearance."    *Morgan* v. *Hoey*, 209 Mich. 655.

See, also, *Johnson* v. *Burke*, 167 Mich. 349.

"Rules governing venue are rules of procedure, not of jurisdiction, and confer a personal privilege that may be waived."    1 Whitehouse, Equity Practice, § 160a.

The court had jurisdiction of the subject-matter of the suit and though it was not brought in the proper county, defendant waived that irregularity by appearance and answer.

Again it is claimed that the court did not obtain jurisdiction because the plaintiffs had not exhausted the remedies provided in the contract for the determination of their loss.    The articles of association which are made a part of the insurance contract provide that when a member sustains a loss his claim shall be submitted to adjusters, from whose findings either

party may appeal to a board of arbitration; that this board shall have exclusive jurisdiction over the controversy and that no suit at law or in equity shall be begun or maintained to recover the loss.   We have held that these provisions of the charter are valid and binding on the insured, and that he cannot invoke the aid of the courts until he has exhausted the remedies provided in his contract, and then only in case of fraud, bad faith or clear mistake of law.   But these provisions of the charter do not preclude the insured from applying to a court of equity to reform the contract so as to make it conform to the real agreement of the parties.   Under the allegations of the bill the court had jurisdiction to hear and determine that question.   Conceding for the present that the court rightfully reformed the policy so as to cover the loss on the contents of the summer kitchen, Did he have the right to determine the loss or was that a question for arbitration?   The record shows that the defendant denied all liability for loss of the contents of the summer kitchen.   This was a waiver of its right to arbitration.   It compelled the insured to invoke the aid of the court in determining its liability.

"If litigation must be resorted to in order to determine liability, the means provided for ascertaining the loss without litigation need not be called into play." *Rott* v. *Insurance Co.*, 218 Mich. 576.

The court correctly held that he had a right to determine the loss on the contents of the summer kitchen. Though for a different reason, we also think he had a right to determine the loss to the building.   The defendant did not deny liability for this loss, but attempted to adjust it by the appointment of an adjuster who was not qualified to act and who was not selected in the manner prescribed by the contract.   The plaintiffs were not members of the Grange.   The articles provide:

"Where the loser is not a member of the Grange, his loss shall be adjusted by any member of the board of directors mutually agreed upon by and between the loser and the secretary of the company." * * *

The man appointed to make the adjustment was not a member of the board of directors, and was not mutually agreed upon between the parties. He was already in the service of the defendant, and was not qualified to serve as adjuster. In that the appraisement and arbitration clauses in the policy do not provide for disinterested adjusters and arbitrators, they are, as the circuit court remarked, "not models of fairness in so far as the policyholder is concerned." In view of this fact, where they do give the insured any choice in selecting those who shall pass on his claim, they should be strictly followed. This attempted adjustment was a deliberate and intentional violation of the plain provisions of the policy contract. It was in no way binding on the insured. He had a right to ignore it and to consider himself released from the conditions of the policy relative to the method of determining his loss.

" 'It is the duty of each party to act in good faith to accomplish the appraisement in the way provided by the policy. If either acts in bad faith, so as to defeat the real object of the clause, it usually absolves the other from a compliance therewith.' 5 Elliott on Contracts, § 4321." *Shapiro* v. *Insurance Co.*, 219 Mich. 581.

This record shows that there was no good faith effort on the part of the defendant to adjust the plaintiffs' loss. They were not given a square deal and were thereby absolved from further attempt to secure a determination of their loss, in accordance with the stipulation of the charter.

Was the court right in reforming the policy? The application for this insurance was taken by one Rudolph Stindt, a local agent for the defendant. The

plaintiffs are of foreign birth, and claim that they cannot read English; that they relied on the agent to fill out the application so that the insurance would cover the household goods in the summer kitchen. They had lived in this building for two years. A dwelling was being erected but all of their household effects were in the summer kitchen. The agent concedes that the agreement was that the insurance should cover these goods. In his cross-examination he said:

"*Q.* So that there isn't any question then that the application was intended to cover this furniture that was in this building that was designated as the summer kitchen?
"*A.* Yes.
"*Q.* There is no question about that at all, is there?
"*A.* No."

Instead of writing into the application that they were applying for insurance on the contents of the summer kitchen, he wrote "cont. dwg." Are the plaintiffs to lose this insurance because the defendant's agent made a mistake in writing out the application? The circuit judge thought not, and we agree with him.

"If there has been no fraud and no concealment, but a full and frank statement of all the facts, and the insurer has framed the paper to suit himself, in view of all the circumstances, the law would justly be subject to the reproach of favoring deception and fraud, if the insurer was allowed to retain the premium and at the same time repudiate the contract, for his own failure to make its recital correspond exactly with the facts." * * * *North American Fire Ins. Co.* v. *Throop,* 22 Mich. 146, quoted with approval in *Haapa* v. *Insurance Co.,* 150 Mich. 467 (16 L. R. A. [N. S.] 1165), and in *Patrons Mut. Fire Ins. Co.* v. *Perl,* 228 Mich. 493.

It is not necessary to discuss this question further. There is no justice or fairness in the position taken by this defendant company. Plaintiffs are entitled

to have the application and policy reformed so as to express the undisputed agreement.   The court correctly disposed of the case.

The decree is affirmed in all respects.   The plaintiffs will have costs.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.